UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,

        v.

CARLOS VAZQUEZ,

        Defendant.
-------------------------------------------------------------X

**MEMORANDUM & ORDER**
21-CR-411 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On January 23, 2023, Defendant pled guilty to Counts One and Thirteen of a thirteen-count Indictment, charging him with: (1) Conspiracy to Commit Access Device Fraud, in violation of 18 U.S.C. § 1029(b)(2); and (2) Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1). Plea Agreement ¶ 1, ECF No. 148; *see generally* Indictment, ECF No. 70. The Court now sentences Defendant and provides a complete statement of reasons, pursuant to 18 U.S.C. § 3553(c)(2), of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is sentenced to seventy-eight (78) months' imprisonment; two (2) years' supervised release with both the standard and special conditions of supervision, excepting the mandatory drug-testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d); restitution in the amount of $487,164.00, plus interest, as set forth in the Order of Restitution; forfeiture in the amount of $490,230.00, as set forth in the Preliminary Order of Forfeiture; and a $200.00 mandatory special assessment.

## I. BACKGROUND

*Background of COVID-19 Emergency Relief Funds*

In March 2020, the President of the United States signed into law various acts providing financial assistance to individuals affected by the onset of the COVID-19 pandemic. Sealed PSR ¶¶ 8–15. These acts included the: (1) Families First Coronavirus Response Act, which provided administrative funding for state unemployment insurance ("UI") agencies; and (2) Coronavirus Aid, Relief, and Economic Security Act ("CARES" Act), which expanded the ability of states to provide UI for workers affected by COVID-19. *Id.* ¶¶ 10–11. The CARES Act created new UI programs, including Pandemic Unemployment Assistance and Federal Pandemic Unemployment Compensation. *Id.* ¶ 12. As the pandemic continued, the President authorized additional funding to alleviate COVID-19-related financial hardship. *See id.* ¶¶ 14–15.

The NYSDOL operates New York's unemployment system and distributes UI benefits. *Id.* ¶ 8. New York's UI benefits are distributed primarily through the New York State Unemployment Insurance Fund ("NYSUIF"). *Id.* Individuals could claim NYSUIF benefits through the NYSDOL website. *Id.* ¶ 16. Once approved, claimants could elect how to receive their NYSUIF benefits. *Id.* ¶ 17. One option was to receive a KeyBank National Association ("KeyBank") debit card pre-loaded with benefits. *Id.* Another option was to upload personal debit card information to the NYSDOL website for funding. *Id.* A third option was to upload personal bank account information to the NYSDOL website to receive a direct deposit. *Id.*

*The Fraudulent Scheme*

Between June 2020 and April 2021, Defendant and his co-conspirators submitted approximately 250 fraudulent UI claims to NYSDOL using the personal identifying information ("PII") of real individuals ("the victims"). *Id.* ¶¶ 19–20. Defendant and his co-conspirators obtained these victims' PII by, among other things, using Bitcoin to purchase the information from individuals on Telegram, an encrypted messaging application. *Id.* ¶ 21.

Defendant and his co-conspirators opted to receive NYSUIF benefits through KeyBank debit cards and direct deposit. *Id.* ¶ 23. Defendant and his co-conspirators made purchases directly with the KeyBank debit cards or else used them to withdraw large amounts of cash from various ATM machines throughout the Eastern District. *Id.* ¶ 24. Notably, Defendant also recruited his girlfriend, a sixteen-year-old minor, to make fraudulent claims. *Id.* ¶ 29; Gov't Sent'g Mem. at 2.

During the offense period, Defendant and his co-conspirators took photographs flaunting their wealth. *Id.* ¶ 26. In online posts, Defendant and his co-conspirators can be seen wearing

2

designer clothes, accessories, and jewelry while surrounded by stacks of cash and luxury cars. *Id.*; *see also* Gov't Sent'g Mem. at 3.

Defendant and his co-conspirators ultimately submitted more than $8,900,000.00 in fraudulent claims, receiving more than $1,750,000.00 in NYSUIF benefits before NYSDOL detected the fraud. PSR ¶ 20. Defendant submitted fraudulent claims under the names of at least sixty-three (63) victims, yielding approximately $487,164.00 in improper NYSUIF benefits. *Id.* ¶ 29; Gov't Sent'g Mem. at 2.[1]

*Procedural History*

On May 14, 2021, the Government filed a Complaint alleging Defendant and his co-conspirators fraudulently filed federal and state unemployment insurance claims, using the PII of third-party victims to receive UI benefits funded by COVID-19 pandemic assistance programs. Compl., ECF No. 1.

On August 5, 2021, a grand jury returned a thirteen-count Indictment charging Defendant with: one count of Access Device Fraud, in violation of 18 U.S.C. § 1029(a)(5) and (c)(1)(A)(ii); one count of Conspiracy to Commit Access Device Fraud, in violation of 18 U.S.C. §§ 1029(a)(2), (a)(5), and (b)(2); and one count of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1), (b), (c)(4), and (c)(5). Indictment, ECF No. 70.

---

[1] The PSR and the Government's sentencing submission both discuss Defendant's involvement in other fraudulent schemes not covered by the instant offense. First, Defendant was in a Telegram group chat with his co-defendants in which he indicated he had created fraudulent documents and used those documents to submit fraudulent claims on Blueacorn and Womply, both of which were providers of Paycheck Protection Program (PPP) loans. PSR ¶ 38; Gov't Sent'g Mem. at 3. Second, Defendant was involved in a scheme to purchase iPhones for resale using the names of various third-party victims to obtain financing. PSR ¶ 40; Gov't Sent'g Mem. at 3.

On May 18, 2021, Defendant was released from custody on a $75,000.00 bond with conditions of supervision, including reporting requirements. Order Setting Conditions of Release, ECF No. 15. Defendant participated in the Special Options Services (S.O.S.) program, which offered him educational and vocational training support. *See* PSR ¶ 122.

On January 23, 2023, Defendant pled guilty to one count of Conspiracy to Commit Access Device Fraud, in violation of 18 U.S.C. § 1029(b)(2), and one count of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1). Plea Agreement as to Carlos Vazquez, ECF No. 148.

On March 24, 2025, Pretrial Services filed a violation memorandum against Defendant, reporting he had been arrested for harassing his ex-girlfriend. Sealed Pretrial Violation Mem., ECF No. 290. On September 9, 2025, Pretrial Services filed a second violation memorandum against Defendant, reporting he had been arrested for driving a car with heavily tinted windows and out-of-state license plates with co-defendant Cabrera. Sealed Pretrial Violation Mem., ECF No. 322. Neither Defendant nor co-defendant Cabrera had valid driver's licenses. *Id.* at 1. Defendant was subsequently removed from the S.O.S. program. *See* Gov't Ltr. Requesting Sent'g Date at 1–2, ECF No. 331. To date, the Court has sentenced all six of Defendant's co-defendants or related defendants.

## II.   LEGAL STANDARD

Congress set forth the procedures for imposing a sentence in a criminal case in 18 U.S.C. § 3553. Together with 18 U.S.C. § 3553, the United States Federal Sentencing Guidelines operate as the "starting point and the initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court

the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.* The court's statement of reasons "shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal citation omitted).

When determining the appropriate sentence, the court must consider seven different factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentence range established by the Guidelines; (5) any pertinent policy statements issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among similar defendants found guilty of similar conduct; and (7) the need to provide restitution to victims of the offense. *See* 18 U.S.C. § 3553(a). The Court now addresses each factor in turn.

### III.   ANALYSIS

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

##### 1.   *Family and Personal Background*

Defendant was born on January 13, 2001, in Brooklyn, New York. PSR ¶ 77. Defendant has never met his father. *Id.* Defendant's mother, who is in her late forties, works as a house cleaner. *Id.* Defendant has two maternal half-brothers; one was deported to Mexico after

serving time in custody for a robbery, and the other lives with Defendant and their mother. *Id.* ¶ 78. Defendant's mother and brothers are aware of the instant case and supportive of Defendant. *Id.* ¶¶ 77–78.

Defendant grew up in below-average socioeconomic circumstances but says his mother "made it work." *Id.* ¶ 79. Although Defendant has never met his biological father, Defendant has a good relationship with his mother's partner. *Id.* Defendant has a three-year-old son with his former partner whom he recruited to the instant criminal scheme. *Id.* ¶ 81; Sealed Pretrial Violation Mem., ECF No. 290.

### 2. *Educational and Employment History*

In 2020, Defendant graduated from Sheepshead Bay AIM Charter School in Brooklyn, New York. *Id.* ¶ 88. Between 2021 and 2023, Defendant worked various seasonal, part-time jobs, including at UPS and at Home Depot. PSR ¶¶ 91–96. Defendant also completed a thirty-hour construction safety and health course through OSHA. *See* Ex. B to Def. Sent'g Mem. at 5–7. In 2025, Defendant obtained his barber's license. Ex. B to Def. Sent'g Mem. at 1.

### 3. *Prior Convictions*

Defendant has no prior convictions. PSR ¶ 71. He has a criminal history score of zero, resulting in a criminal history category of I. *Id.* ¶ 72.

### 4. *Physical and Mental Health*

Defendant reports no physical or mental health conditions. *Id.* ¶¶ 85–86.

### 5. *Substance Abuse*

Defendant reports drinking alcohol socially. *Id.* ¶ 87. Defendant has a history of marijuana use; he has tested positive for marijuana several times while on pretrial supervision. *Id.*; *see also* Sealed Pretrial Violation Memoranda, ECF Nos. 122, 278, and 282.

      6.    *Nature and Circumstances of the Offense*

The Court's previous statements address the nature and circumstances surrounding the instant offense. *See supra* Part I.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's conduct, which involved stealing innocent victims' identities to obtain disaster relief funds for his personal gain. Defendant and his co-conspirators submitted approximately 250 claims to New York's unemployment benefits office, claiming nearly $9,000,000.00 in fraudulent benefits and receiving more than $1,750,000.00 in disbursements. PSR ¶ 20. Defendant submitted or caused to be submitted at least sixty-three fraudulent claims. *Id.* ¶ 29. The Government characterizes Defendant's conduct as "incorrigible." Gov't Sent'g Mem. at 7. He was also involved in other frauds: forging tax documents, submitting fraudulent claims in other states, and using victims' personal identifying information to finance iPhones for resale. *Id.* The Court's sentence will deter others from engaging in similar conduct and justly punish Defendant for his crimes. Accordingly, the Court's sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in this factor. 18 U.S.C. § 3553(a).

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3). Defendant pled guilty to one count of Conspiracy to Commit Access Device Fraud, in violation of 18 U.S.C. § 1029(b)(2), and one count of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1). Plea Agreement ¶ 1.

Count One:  Conspiracy to Commit Access Device Fraud

On Count One, Defendant faces a statutory maximum term of seven-and-a-half years' imprisonment and no minimum term. 18 U.S.C. § 1029(b)(2), (c)(1)(A)(ii). He also faces a maximum term of three years' supervised release. 18 U.S.C. § 3583(b)(2), (e). If a condition of supervised release is violated, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(b)(2) and (e).

Count Thirteen:  Aggravated Identity Theft

On Count Thirteen, Defendant faces a statutorily mandated term of two years' imprisonment, which must run consecutively to any sentence imposed on any other count. 18 U.S.C. § 1028A(a)(1), (b)(2). Defendant also faces a maximum term of one year of supervised release. 18 U.S.C. § 3583(b)(2), (e). If a condition of supervised release is violated, Defendant may be sentenced to up to one year without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(b)(2), (e).

Defendant is ineligible for probation on both counts. 18 U.S.C. § 1028A(b)(1); 18 U.S.C. § 3561(a)(2), (3). Defendant faces a maximum fine of the greater of $250,000.00, or twice the gross gain or twice the gross loss, which he appears unable to pay. 18 U.S.C. § 3571(b)(2), (b)(3), and (d); PSR ¶ 115. The Court is also required to impose a mandatory special assessment

of $100.00 per count—for a total of $200.00 in this case—pursuant to 18 U.S.C. § 3013(a)(2)(A).

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . [t]he applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A).

<u>Count One: Conspiracy to Commit Access Device Fraud</u>

The applicable Guideline for Conspiracy to Commit Access Device Fraud is U.S.S.G. §2B1.1(a)(2), which provides a base offense level of six. Sixteen levels are added because the offense involved a loss amount greater than $1,500,000.00 but less than $3,500,000.00. U.S.S.G. §2B1.1(b)(1)(I). Two levels are added because the offense involved ten or more victims. U.S.S.G. §2B1.1(b)(2)(A)(i). Two levels are added because the fraud arose in connection with major disaster or emergency benefits (*see* 18 U.S.C. § 1040). U.S.S.G. §2B1.1(b)(12). Three levels are added because Defendant acted as a manager or supervisor—but not an organizer or leader—of an offense involving five or more participants. U.S.S.G. §3B1.1(b). A final two levels are added because Defendant recruited a minor to commit a crime. U.S.S.G. §3B1.4.

Three levels are reduced for Defendant's timely acceptance of responsibility under U.S.S.G. §3E1.1(a)–(b). PSR ¶¶ 67–68. One level is reduced under the global resolution policy consideration set forth in U.S.S.G. §5K2.0. *Id.* ¶ 121; Gov't Sent'g Mem. at 5 n.3.

<u>Count Thirteen: Aggravated Identity Theft</u>

The applicable Guideline for Aggravated Identity Theft is U.S.S.G. §2B1.6, which provides a base offense level of twenty-four. The Guidelines sentence is the term of imprisonment required by statute, which is two years. 18 U.S.C. § 1028(a)(1).

9

### Effective Guidelines Ranges

All parties agree Defendant has no criminal history, resulting in a criminal history category of I. PSR ¶ 72; Gov't Sent'g Mem. at 3; *see* Defense's Sentencing Memorandum ("Def. Sent'g Mem.") at 3, ECF No. 337. All parties agree Defendant has a total offense level of 27, which, together with a criminal history category of I, results in a Guidelines range of 70–87 months' imprisonment for Count One, which, together with the statutorily mandated sentence of twenty-four (24) months' imprisonment for Count Thirteen, yields a total Guidelines range of 94–111 months' imprisonment. PSR ¶ 121; Gov't Sent'g Mem. at 5; Def. Sent'g Mem. at 3.

### The Parties' Sentencing Recommendations

Probation breaks its recommendation down by count. For Count One, Probation recommends a below-Guidelines sentence of three (3) months' imprisonment; one year of supervised release with special conditions; and a $100.00 mandatory special assessment. For Count Thirteen, Probation recommends the statutorily mandated sentence of two (2) years' imprisonment—which is required to run consecutively to any term of imprisonment imposed on Count One—followed by one (1) year of supervised release with special conditions, to run concurrent to any term of supervised release imposed on Count One. Prob. Sent'g Rec. at 1, ECF No. 183-1.

The Government recommends a below-Guidelines sentence of no less than seventy-eight (78) months' imprisonment total on both Counts One and Thirteen. Gov't Sent'g Mem. at 1. Defense counsel recommends a below-Guidelines sentence of sixty (60) months' imprisonment, comprising thirty-six (36) months on Count One and twenty-four (24) months on Count Thirteen. Def. Sent'g Mem. at 7.

The Court appreciates the sentencing arguments raised by all parties and has considered each in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth Section 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

Defense counsel directs the Court to the policy considerations in U.S.S.G. §5H1.1, which the United States Sentencing Commission amended in November 2024. Def. Sent'g Mem. at 3–4. Before its 2024 amendment, U.S.S.G. §5H1.1 stated: "Age may be relevant in determining whether a departure is warranted." *See* United States Sentencing Commission, Amendment 829. Now, as amended, U.S.S.G. §5H1.1 states: "A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense. . . ." *Id.* Defense counsel contends Defendant's age of nineteen at the time he committed the instant offense constitutes sufficient youthfulness under the amended policy considerations in U.S.S.G. §5H1.1 to warrant a downward departure from the Guidelines. Def. Sent'g Mem. at 4; *contra* Gov't Sent'g Mem. at 7 (stating Defendant was twenty years old when he committed the instant offense). For its part, Probation also identifies Defendant's age as a potential mitigating factor. PSR ¶ 122.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth Section 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

On April 28, 2023, the Court sentenced co-defendant Andre Ruddock to three (3) years' probation for one count of Operating an Unlicensed Money Transmitting Business, in violation of 18 U.S.C. § 1960(a). Mem. & Order as to Andre Ruddock, ECF No. 174. On May 8, 2024,

11

the Court sentenced co-defendant Gianni Stewart to twenty-four (24) months' imprisonment for one count of Conspiracy to Commit Access Device Fraud. Mem. & Order as to Gianni Stewart, ECF No. 259. On May 13, 2024, the Court sentenced co-defendant Seth Golding to fifty-seven (57) months' imprisonment for one count of Conspiracy to Commit Access Device Fraud. Mem. & Order as to Seth Golding, 1:22-CR-143, ECF No. 118. On May 14, 2024, the Court sentenced co-defendant Armani Miller to fifty-seven (57) months' imprisonment for one count of Conspiracy to Commit Access Device Fraud. Mem. & Order as to Armani Miller, ECF No. 264. On May 21, 2025, the Court sentenced co-defendant Bryan Abraham to sixty (60) months' imprisonment for one count of Conspiracy to Commit Access Device Fraud and one count of Aggravated Identity Theft. Mem. & Order as to Bryan Abraham, ECF No. 302. On September 16, 2025, the Court sentenced co-defendant Angel Cabrera to twenty-four (24) months' imprisonment for one count of Conspiracy to Commit Access Device Fraud. Mem. & Order as to Angel Cabrera, ECF No. 326.

  Defense counsel argues Defendant's conduct warrants a below-Guidelines sentence like the one imposed on co-defendant Abraham, who pled guilty to the same offenses. Def. Sent'g Mem. at 7. The Government avers the appropriate inquiry for the Court is "among similarly situated defendants," and not simply "disparity among co-defendants." Gov't Sent'g Mem. at 8 (quoting *United States v. Kanagbou*, 726 F. App'x 21, 25 (2d Cir. 2018)). The Government argues its requested sentence would not create disparity among similarly situated co-defendants because Defendant's conduct is readily distinguishable from that of *any* of his co-defendants. *Id.* at 9. The Government points out co-defendant Abraham was only eighteen years old at the time he participated in this fraudulent scheme. *Id.* Defendant, on the other hand, was twenty years

old and he recruited his sixteen-year-old girlfriend and his eighteen-year-old friend to the scheme. *Id.*

For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh Section 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).

Restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A. Accordingly, on May 10, 2024, the Court entered an Order of Restitution against Defendant in the amount of $487,164.00, plus interest. Order of Restitution ¶ 1, ECF No. 258.

### IV.    CONCLUSION

For the reasons set forth above, Defendant is sentenced to seventy-eight (78) months' imprisonment; two (2) years' supervised release, with the standard and special conditions of supervision, excepting the mandatory drug-testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d); restitution in the amount of $487,164.00, plus interest, as set forth in the Order of Restitution; forfeiture in the amount of $490,230.00, as set forth in the Preliminary Order of Forfeiture; and the $200.00 mandatory special assessment. This sentence is sufficient but no greater than necessary to accomplish the purposes of Section 3553(a)(2). The Court does not impose a fine given Defendant's apparent inability to pay.

The Court expressly adopts the factual findings of the Sealed Presentence Investigation Report and Addendum thereto, as corrected herein, to the extent those findings are not inconsistent with this opinion.

SO ORDERED.

s/WFK
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: December 12, 2025
       Brooklyn, New York

14